IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL SHANE DAUGHTRY | Case No.: 1:21-CR-141-RDM-1 |

### SENTENCING MEMORANDUM ON BEHALF OF MICHAEL SHANE DAUGHTRY

COMES NOW the Defendant, Michael Shane Daughtry by and through his counsel, and herein files this sentencing memorandum, in order to provide necessary information, context and support for a reasonable sentence in this case. In support, he shows as follows:

**I. Presentence Report Objections**

Mr. Daughtry filed no objections to the Draft Presentence Report (DPSR)

**II. Argument for a Reasonable Sentence**

In order to determine what is an appropriate and reasonable sentence, the court is required to consider both the factors as outlined by Congress in 18 U.S.C. §3553(a)(1), as well as the provisions of the properly calculated United States Sentencing Guidelines.

In this section Mr. Daughtry, will advocate for a reasonable sentence in this case, and argue that a reasonable sentence in this case is a probationary one, for a number of reasons.

   **a.** *Any Sentence Must Be Individualized to the Defendant*

A fundamental pillar of the sentencing process is the recognition that the punishment should consider both the crime of conviction, as well as the offender. *Williams v. New York*, 337 U.S. 241, 247 (1949). This determination includes the mandate that each sentencing judge view each case "as a unique study in the human failings that sometimes mitigate, sometimes magnify,

the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 (1996). This principle has been codified by Congress into the United States Code in several areas, making it clear that there should be no limitation on a sentencing judge's ability to consider information relevant to the sentencing process, and mandating a consideration of the unique history and characteristics of each defendant. *See:* 18 U.S.C. § 3661; 18 U.S.C. § 3553(a)(1).

The Supreme Court has steadfastly reaffirmed a sentencing court's freedom, indeed its obligation, to consider the entire universe of facts in a defendant's life: "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Pepper v. United States*, 131 S. Ct. 1229, 1239-40 (2011). A district court must impose a sentence that is "sufficient but not greater than necessary" to meet the goals of the Sentencing Reform Act. 18 U.S.C. § 3553(a)(1).

18 U.S.C.A. § 3553(a) requires courts to consider the following factors:

    (1)   *the nature and circumstances of the offense and the history and characteristics of the defendant;*

    (2)   *the need for the sentence imposed —*

        A.  *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;*

        B.  *to afford adequate deterrence to criminal conduct;*

        C.  *to protect the public from further crimes of the defendant; and*

        D.  *to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*

    (3)   *the kinds of sentences available;*

    (4)   *the kinds of sentence and the sentencing guideline range;*

> (5)  any pertinent policy statements of the Sentencing Commission;
>
> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7)  the need to provide restitution to any victims of the offense.

What this makes abundantly clear is that this Court, when considering what sentence is appropriate for Mr. Daughtry in this case must Court look to Mr. Daughtry, as an individual, and fashion a sentence which is appropriate for him and him alone. To that end, a reasonable review of Mr. Daughtry's personal history and characteristics lead to the conclusion that a probationary sentence would be the reasonable and appropriate sentence in this case, while a sentencing involving incarceration or further home confinement would be greater than necessary.

    b. *18 U.S.C. §3553(a) Factors*

Because 18 U.S.C. §3553(a)(1) dictates that the court must consider the history and characteristics of the defendant, it is important that the court remain aware of Mr. Daughtry's background. A look at Mr. Daughtry's life before, on and after January 6, 2021, shows a man near retirement age, who has spent most of his professional life serving and protecting his community as well as begin a loving husband and the best father he could be.

    i. <u>History and Characteristics of Mr. Daughtry</u>

Michael Shane Daughtry (who goes by Shane) was born, raised and has spent his entire life in southwest Georgia. Right now, he lives 15 miles from where he was raised. He has one sister who lives in Albany, GA about 30 miles north of Mr. Daughtry's home. Like many of the people who traveled to Washington D.C. on January 6, until the 2020 presidential election Mr. Daughtry had not been particularly involved in politics, local or national. And he had certainly never traveled to our nation's capitol to attend a political rally.

Mr. Daughtry left high school early and joined the family business building livestock trailers. He earned his GED in 1978 when he was 16, just after leaving high school, and set about learning and developing the family business.

Like many young men who were finished with school and working full-time, Mr. Daughtry fell in love and got married when he was still young, just 19 years old. He and his first wife had only one child, a daughter they named Jennifer. Mr. Daughtry continued to work hard and did his best to be a good son to his parents, a good husband, and a good father. After almost 10 years of marriage, he found out his wife was cheating on him and so he divorced her. As difficult as that was, harder times followed. After the divorce, and in violation of the divorce decree providing joint custody shared between Mr. Daughtry and his ex-wife, she kidnapped Jennifer and simply disappeared. Mr. Daughtry discovered this when he went to pick Jennifer up for the weekend and the house was empty. He had no idea where they had gone and was unable to find any information about them. It took him 10 years of searching to finally locate his daughter, and when he did, she was living in Australia. She was 19 years old when he next saw her. Sadly, the damage was done, and Jennifer had no interest in having a relationship with Mr. Daughtry. Despite his best efforts over the years, that has not changed, and he hasn't spoken to her in approximately 8 years.

From this tragedy however Mr. Daughtry found the most silver of linings: he met and fell in love with the woman whom his mother called his soul-mate: Brenda Delk. They were married in 1989 and began their life together.

In the mid-1980's Mr. Daughtry yearned for more than building trailers his whole life and acted on a long-held interest in becoming a police officer. He set about getting the training

necessary, earning his First Responder certification in 1987, and his Emergency Medical Technician in 1988.

Finally, in 2002 he attended the Peace Officer Standards and Training academy, graduated successfully and was certified by the State of Georgia as a peace officer. He began his career by joining the Pelham Police Department in Pelham, GA. He worked there for the next four years, before moving over to the Camilla Police Department in Camilla, GA. He was promoted to Captain by 2008. In 2013 he left law enforcement to open his own business as a gunsmith, CK Arms in Camilla, GA. He maintained that business as his full-time employment until 2019.

In 2019, after several years of heroic fighting, Mr. Daughtry's wife Brenda died from cancer. Her death was a devastating blow to Mr. Daughtry, upending the life he had built with her, and destroying the plans they had for their retirement years.

Just after her death, he returned to work at the Pelham Police Department. He was fired in early 2020 because the police chief did not know that Mr. Daughtry was also still running CK Arms, and police officers were not allowed to have additional or secondary employment.

Since leaving the Pelham Police Department, Mr. Daughtry has been supporting himself with savings and the social security benefits payment from his first wife's estate. He counts himself incredibly lucky to have met and fallen in love with another woman, Tammy Hearing. After Brenda's death he did not think he would find love again. They have been living together in his house for the last several years. Ms. Hearing suffers from severe fibromyalgia, and she is considered fully disabled due to this condition and cannot work. Mr. Daughtry is her sole caregiver.

Notable in this context, Mr. Daughtry has absolutely no criminal history whatsoever. Prior to this incident, he has never been arrested or even received a traffic ticket. Upon the filing of the complaint against him on January 15, 2021, Mr. Daughtry appeared before the United States Magistrate Judge in Macon, GA. The government did not seek detention of Mr. Daughtry then or at any time since. He was released on an unsecured bond of $25,000 subject the standard conditions of pretrial release pending his appearance before Magistrate judge in the D.C. District. (MDGA Case No. 5:21-mj-00007, Doc. 4-9)   Those conditions included both home detention and level TAP restrictions[1] limiting Mr. Daughtry's use and access to the internet, computers or other electronic devices. The home detention also includes electronic monitoring which Mr. Daughtry pays for.

Mr. Daughtry then made his initial appearance in the District of Columbia.   There he was released on a personal recognizance bond, and again subject to the same conditions of pretrial release previously imposed. (ECF 13) Since that time he has been in perfect compliance with all conditions imposed by the court. (ECF 15, 31) His lack of criminal history, and perfect compliance while on pretrial release are consistent with how he's lived his life, with the sole exception of the events surrounding January 6, 2021.But it is clear that day was an anomaly in an otherwise law-abiding life.

    ii.   *Nature and Circumstances of the Offense*

The nature and circumstances of the offense conduct in Mr. Daughtry's case present a unique situation for the court.  All of his conduct that day, both direct and relevant, was shared by thousands of others.  Yet, his individual conduct is what the court must consider when determining a reasonable sentence.  Nevertheless, the general events of the day almost certainly are necessary to provide context when considering Mr. Daughtry individually.  Viewed through

---

[1] "TAP" Technology Access Program

that lens, Mr. Daughtry's individual conduct, while criminal and dangerous writ large, was not violent in any way. Mr. Daughtry accepts full responsibility for his actions that day, and for the decisions he made. The discussion below is in no way meant to minimize his conduct, but rather to place it into context for sentencing purposes.

Mr. Daughtry's involvement in politics began and ended with the 2020 presidential election. In the leadup to the election Mr. Daughtry, like many of the January 6 defendants, believed the right-wing media's reporting of claims of election fraud across the nation. Following the results of the election, he believed that the election was not fair, and that former President Trump had been cheated out of his victory. Mr. Daughtry attended a pro-Trump rally on January 4, 2021, in Georgia, and made social media posts arguing that the election results were invalid, and "these Democrats" should be prosecuted for treason.

He and his girlfriend Tammy drove to Washington D.C. to attend the January 6 rally. Following the rally, they walked with the crowd to the U.S. Capitol. While there, following the breach of the grounds by others, Mr. Daughtry entered the Capitol grounds and stayed there despite the directions to leave. He took pictures, made a few social media posts, and spoke with a former Pelham Police Department colleague. In those posts and that conversation, he exaggerated his role in the events of the day, claiming he had participated in tearing down and breaching fencing at the Capitol. He did not. He was bragging for effect, and in an attempt to impress his friends back home.

Mr. Daughtry's conduct before, on, and following January 6, 2021, is consistent with other similarly situated defendants who have received probationary sentences in relation to their conduct on January 6, 2021. He did not enter the U.S. Capitol. While on the Capitol grounds he

did not break in or damage anything. He did not take any property that did not belong to him, such as anything belonging to law enforcement. He did not assault or even confront anyone.

As time has passed, and he has had time to reflect on his actions he has had the chance to contextualize them for himself.  He has had time to separate from the noisy chatter about the 2020 election and the events of January 6, 2021.  He has come to understand what he did that day and how her participation, no matter how small, was significant and meaningful.  What he has been able to do is to show the court that his conduct on January 6, 2021, was an anomaly.  A departure from how he ordinarily lives his life.  He has shown this to the court by strictly adhering to the conditions of pretrial release, and otherwise leading a law-abiding life as a contributing member of his family and his community. All of these facts are consistent with other January 6 defendants who have received probationary sentences, which is what Mr. Daughtry is requesting.

    c.   18 U.S.C. §3553(a)(2)

18 U.S.C. §3553(a)(2) requires the court to consider how the sentence imposed will adequately address a certain list of factors.  The sentence should reflect the seriousness of the offense, promote respect for the law and provide just punishment. It should adequately deter Mr. Daughtry and others from doing the same thing.  If necessary, it should protect the public from Mr. Daughtry, in the future.  It should avoid unwanted sentencing disparities. And, if necessary, it should provide Mr. Daughtry, with the necessary treatment in the most effective manner possible.

Mr. Daughtry understands and accepts that there must be punishment for his conduct.  He stands ready to accept the court's decision on what sentence is appropriate and reasonable considering these highly unusual circumstances.  Mr. Daughtry respectfully believes that a

sentence of probation, along with a $500 restitution payment, and any additional fine or community service the court thinks is appropriate is a sentence sufficient, but not greater than necessary, to meet the requirements of §3553(a).

### *Seriousness of the Offense*

Mr. Daughtry understands the seriousness of the offense in this case. He knows there is an appropriate way to express protest with your government, and this was not it. The damage done to the Capitol building, the harm done to law enforcement and other Capitol staff, the fear instilled in those present inside doing their duty, all were far, far excessive. However, Mr. Daughtry's behavior was minimal in nature and comparison. He never entered the Capitol building nor cause any damage. He did not confront, assault or harm anyone. He didn't breach any fences or barricades, entering the grounds only after many, many others had already done so.

A sentence of probation would be proportionate to Mr. Daughtry's behavior in this case. The simple fact of a federal criminal conviction for her actions that day, standing alone, is extremely significant. Any financial penalty imposed would be significant for a man at retirement age living on a fixed income. In short, a probationary sentence, in this case, would adequately address the seriousness of the offense. A sentence of imprisonment, or even additional home confinement would be greater than necessary.

### *Deterrence*

Mr. Daughtry himself is deterred from this specific behavior in the future, and more generally any criminal behavior. To the extent that anyone who would consider similar behavior in the future is paying attention to Mr. Daughtry's case and his sentence, imposing a period of incarceration over probation here hardly seems likely to deter someone determined to do so.

### *Protection of the Public*

Mr. Daughtry has led a law-abiding life from the moment he reached the age of reason until today, but for his actions on January 6, 2021. The only "danger" he might theoretically pose to the public would be from similar activity in the future. However, that day was an aberration from how he normally conducts himself. His own realizations, this prosecution, his conviction and a sentence of probation all combine to deter him from anything like this in the future. He poses no other danger to the public, and a period of incarceration is not necessary to protect the public from Mr. Daughtry. The deterrent effect of a probationary sentence is more than adequate. Incarceration would be greater than necessary.

*Education, Training and Treatment*

Mr. Daughtry is not in such need of any of these three things such that the court should consider the United States Bureau of Prisons as the only place he could get them.

*Available Sentences*

The maximum term of imprisonment for the offense of conviction is one year. The advisory sentencing guideline range is 0-6 months incarceration from an offense level of 4 and a criminal history score of 0.

If probation is imposed, the maximum term that can be imposed is three (5) years. A special assessment of $10.00 must be imposed and the maximum fine is $9,500.00. Mr. Daughtry has agreed to make $500 restitution payment. If a sentence of imprisonment is imposed, no more than one year of supervised release can be imposed. Mr. Daughtry believes that a period of probation, any fine or community service the court feels is appropriate along with the $500 restitution payment Mr. Daughtry has agreed to, is sufficient, but not greater than necessary in this case.

*Need to Avoid Sentencing Disparities*

As of the date of this sentencing, there will have been approximately two hundred defendants sentenced for their conduct on and around January 6, 2021. Without detailing all of them, a review makes clear that defendants who are similarly situated to Mr. Daughtry have received probationary sentences rather than incarceration sentences. That is, defendants with no criminal history who entered only the Capitol grounds but did no damage, stole nothing, nor confronted or assaulted anyone and then left have generally been receiving probationary sentences. Mr. Daughtry believes that a probationary sentence is similarly appropriate for him in this case as well. He is confident that this court is well aware of the sentences it, along with the other judges in this district, has imposed in January 6 cases, and is confident the court will avoid giving him a disparate sentence.

**III. Conclusion**

Mr. Daughtry comes humbly before the court as part of an unprecedented event in United States history. His initial intention was only to attend the January 6 rally and protest what he at the time believed was fraud within the presidential election. He never made any advance plans to be part of what happened on January 6, 2021, at the U.S. Capitol other than to decide to go. Once there, and after others broke through police lines and into the Capitol, he decided to follow. He did no damage while there. He confronted nor assaulted anyone while there. He took nothing while he was there. He knows what he did was wrong. He has pleaded guilty to the offense, and accepted responsibility for his actions. He simply comes now asking the court for a sentence which is sufficient, but not greater than necessary, to meet the statutory requirements of 18 U.S.C. §3553(a). Based on his conduct before, during and after January 6, and in comparison with other similarly situated defendants, a term of probation rather than incarceration is just such a sentence.

WHERFORE, Mr. Daughtry respectfully requests the Court grant his motion and impose a sentence as requested.

Respectfully submitted this 3rd day of June 2022.

/s/**Timothy R. Saviello**
Timothy R. Saviello
Ga. Bar No. 627820
Attorney for Defendant
Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King Jr Blvd, Ste 400
Macon, Georgia 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
Email: tim_saviello@fd.org

## CERTIFICATE OF SERVICE

I, Timothy R. Saviello, hereby certify that on June 3, 2022, I electronically filed the foregoing pleading with the clerk of Court using the CM/ECF system which will send notification of such record of counsel.

/s/**Timothy R. Saviello**
Timothy R. Saviello
Ga. Bar No. 627820
Attorney for Defendant
Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King Jr Blvd, Ste 400
Macon, Georgia 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
Email: tim_saviello@fd.org