IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 21-CR-141 (RDM) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL SHANE DAUGHTRY, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF PROBATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Michael Shane Daughtry's Motion for Early Termination of Probation, ECF No. 56 ("Motion" or "Mot."). In support of this opposition, the government relies on the following factual and legal authorities.

I.   BACKGROUND

On March 10, 2022, the defendant pled guilty to one count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). The defendant, who was a former police officer with the Pelham (Georgia) Police Department (who terminated his employment in part because of concerning Facebook posts about his "Crazy Koon" armory business in connection with the 2020 election),[1] actively participated in the January 6, 2021 attack on the United States Capitol.

---

[1] One such concerning post with Daughtry's Crazy Koon Armory logo was posted the night before the 2020 Presidential Election and offered, "Anyone needing an AR15 and some extra ammo before the election, I've got a couple left in stock. . . It may be your last chance if the election don't go right tomorrow!  Let me know if you're interested." See Government Sentencing Memo, ECF No. 46, at 13 (citing the Presentence Investigation Report ("PSR"), ECF No. 47, at ¶ 16; Statement of Offense, ECF No. 40, at ¶ 7).

1

Daughtry was one of the first rioters to enter the restricted area on the West front of the Capitol—and continually bragged about being in the initial group that tore down the fence and led others to storm the Capitol. ECF No. 40, at ¶ 11. The defendant did not enter the Capitol but remained within in the restricted area around Capitol on January 6, 2021. *Id*. On January 6, 2021, the defendant Daughtry posted the below image of how close he was to the Capitol before the initial breach—and showing how closely he observed fencing surrounding the restricted area, signs placed throughout the fencing, and officers in position to prevent rioters from entering the restricted area. ECF No. 40, at ¶ 10.



(*Image 1: photo posted by Daughtry on January 6, 2021*)

Despite these clear measures to protect the Capitol, Daughtry entered and remained in the restricted area around the Capitol on the West front, eventually climbing the southwest scaffolding in the West Terrace area. After participating in the initial breach, Daughtry remained within the restricted perimeter—despite witnessing rioters confronting and assaulting law enforcement on the West front. ECF No. 40, at ¶ 12.



(*Image 2: social media post by Daughtry showing the West front from the southwest scaffolding*)

      In a separate January 6th post, the defendant claimed, "We just tore down the fence and stormed the Capitol." On January 6, 2021, the defendant also spoke with a Pelham, Georgia Police Officer who recorded the conversation. In this communication the defendant stated he was at the Capitol and was among those "that tore the fence down up there. We was the first ones over the fence. Everyone followed us." ECF No. 40, at ¶ 11.

      On June 10, 2022, the Court sentenced the defendant to 36 months of probation, restitution of $500, and a $25 assessment. ECF No. 53. The defendant now asks for early termination of his probation which, as ordered, would end on June 9, 2025. Mot., at 2.

## II.  LEGAL AUTHORITIES

Pursuant to 18 U.S.C. § 3564(c), a court has discretion to terminate a term of probation imposed in a misdemeanor case at any time "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice."  18 U.S.C. § 3564(c).  Early termination of probation "is not warranted as a matter of course." *See United States v. Gerritson,* No. 01 cr. 1081, 2004 WL 2754821, at *3 (S.D.N.Y. Dec. 1, 2004).  A defendant must show exceptionally good behavior or that there is a new or unforeseen circumstance. *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997); *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) (internal citations omitted).  In making this determination, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). *Lussier*, 104 F.3d at 35; *see also United States v. Hartley*, 34 F.4th 919 (10th Cir. 2022) (holding that a district court must make individualized determinations based on the applicable statutory criteria before responding to a request to modify a sentence); *cf. United States v. Ferrell,* 234 F. Supp. 3d 61, 63 (D.D.C. 2017) (same holding for considering early termination of probation in felony case).

Courts have routinely upheld that mere compliance with the conditions of probation without more does not warrant early termination. *See, e.g.*, *United States v. Suarez*, 21-cr-205 (DLF), 11/9/23 Minute Entry ("As courts in this district have previously held, 'good behavior alone' is generally 'insufficient to warrant early termination' of probation.") (citing *United States v. Parker*, 219 F. Supp. 3d 183, 191 (D.D.C. 2016)); *United States v. Wesley*, 311 F. Supp. 3d 77, 81-82 (D.D.C. 2018) (Kollar-Kotelly, J.) (noting that "even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination").

Furthermore, "the text of § 3564(c) makes it clear that early termination of probation must be warranted by <u>both</u> the interest of justice and the conduct of the defendant, and it must be

4

informed by 3553(a) factors." *United States v. Buhler*, No. 12-CR-510 (CKK), ECF No. 47, at 8 (May 26, 2024) (emphasis in original) (denying motion for early termination of probation). Therefore, "even if the interest of justice weighs in favor of early termination of probation, that factor alone does not suffice to grant Defendant's motion where the Court has found that the conduct of the defendant and the Section 3553(a) factors weigh in favor of denying early termination of probation." *Id*.

### III. ANALYSIS

#### A. Daughtry Has Not Demonstrated Any New or Extraordinary Circumstances that Warrant Early Termination of Probation.

Daughtry argues that his probation should be terminated early because he "has not violated any conditions of probation." Mot., at 1. However, as many courts have recognized, mere compliance with the conditions of probation does not warrant early termination. In the similar context of supervised release, in *United States v. Longerbeam*, the court explained that this circuit requires either "changed circumstances" or "something of an unusual or extraordinary nature in addition to full compliance" to justify early termination of supervised release. 199 F. Supp. 3d 1, 2-3 (D.D.C. 2016) (internal citations omitted). Compliance alone is not an extraordinary circumstance. That makes sense: a defendant's "compliance with his probation conditions is commendable, but it is also expected." *United States v. Gionet*, No. 22-cr-132, ECF No. 88, at 2 (D.D.C. Feb. 9, 2024) (denying motion to terminate probationary term of unlawful split sentence); *see also United States v. Hemphill*, No. 21-cr-555, 2024 WL 578977, at *3 (D.D.C. Feb. 13, 2024) (denying motion to terminate probationary term of unlawful split sentence, noting that "adhering to the conditions of probation 'is not exceptional such that it requires early termination of probation' because doing so 'was ordered by the Court, and compliance is expected.'" *See, also, e.g.*, *Folks v. United States*, 733 F. Supp. 2d 649, 652 (M.D.N.C. 2010) (rejecting motion for early

5

termination of supervised release because there was nothing unusual about defendant's case), citing *United States v. McKay*, 352 F.Supp.2d 359, 361 (E.D.N.Y. 2005); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (noting that "[w]hile [defendant's] post- incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule"); *United States v. Weintraub*, 371 F. Supp. 2d 164, 167 (D. Conn. 2005) (noting that "[a]lthough [the defendant's] ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required to all criminal defendants and is not a basis for early termination of his supervised release"); *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003) (ruling that "mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination"); *United States v. Hardesty*, Case No. 95–20031–01–JWL, 2002 WL 731705, at *1 (D. Kan. Apr. 2, 2002) (rejecting arguments that defendant was "fully rehabilitated" and complied in all respects with post-release requirements and that continued release would serve "no meaningful and useful purpose").

Here, no such extraordinary circumstances exist. The defendant is doing what is expected of him, nothing more. Compliance with probationary terms is what is expected of defendants who are on probation—and does not warrant early termination under the law.

> **B.     Early Termination of Daughtry's Probation Does Not Serve the Interest of Justice; Especially as Informed by 3553(a) Factors.**

Looking to the sentencing factors under 18 U.S.C. § 3553(a), early termination of probation here would not serve the interest of justice. As to the nature and circumstances of the offense, § 3553(a)(1), Daughtry pled guilty to entering and remaining in a restricted building or grounds. Daughtry's participation in the attack on January 6, 2021 contributed to the devastating

6

consequences for law enforcement and democracy itself at the Capitol that day, which continue to reverberate.

Daughtry appeared to be a gleeful participant in this tragic attack. After taking a photo of officers in position to defend the Capitol Grounds, including the fencing and signs around the Capitol on the West front, Daughtry bragged online about tearing down the fence and leading the rioters who first entered the restricted area. He later said he was among those "that tore the fence down up there. We was the first ones over the fence. Everyone followed us." ECF No. 47, at ¶ 18. He climbed scaffolding on the West front of the Capitol where he saw rioters confronting and assaulting law enforcement officers; and remained until then President Trump "asked us to leave." ECF No. 46, at 16 (citing social media posts by Daughtry post-January 6, 2021).

As to other sentencing factors—the history and characteristics of the defendant, § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); and the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B)—the need for deterrence in particular continues, now that the country is in another election year, and Daughtry may face the same pressures that led him to offend previously.

Daughtry's sentencing Guidelines, as calculated by the Probation Office, called for a period of incarceration. ECF No. 47, at ¶ 5. However, given the mix of aggravating and mitigating factors in this case, the government recommended four months of home confinement and 36 months of probation. ECF No. 46, at 29. The Court—after taking into account all of the 3553(a) factors which it is required to consider in the determination here under §3564(c)—then sentenced the defendant to 36 months of probation. ECF No. 53. The Court's already limited calculation should not be downgraded further still, based on nothing more than defendant's compliance with probation, which is to be expected. Daughtry's request for a reduction in the set probationary

period would undercut the Court's balancing of the § 3553(a) factors after hearing from the government, defense counsel, and Daughtry at the sentencing hearing.

As highlighted in *United States v. Buhler*, "the Court need not determine the weight of the interest of justice factor as the text of §3564(c) makes it clear that early termination of probation must be warranted by <u>both</u> the interest of justice and the conduct of the defendant, and it must be informed by 3553(a) factors." No. 12-CR-510 (CKK), ECF No. 47, at 8 (May 26, 2024) (emphasis in original).  Here, the conduct of the defendant and 3553(a) factors as already considered by this Court weigh heavily in favor of denying early termination of probation.  Were the Court to consider the interest of justice, though, it would find that it also weighs in favor of requiring the defendant to complete the full term of probation, a sentence that has already afforded the defendant more accommodating treatment than many others who committed similar crimes and were sentenced to periods of home detention or incarceration.

## IV. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny Daughtry's Motion.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney

By:     */s/ Victoria A. Sheets*
           VICTORIA A. SHEETS
           Assistant United States Attorney
           NY Bar No. 5548623
           601 D Street NW
           District of Columbia, DC 20530
           (202) 252-7566
           victoria.sheets@usdoj.gov